***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments on appeal. The Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The 5 June 2002 order of the District Court of Stokes County, North Carolina (99 CVD 244) is hereby incorporated by reference.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in the Pre-Trial Agreement and at the hearing on 9 January 2002 as:
 STIPULATIONS
1. At all relevant times, the employer-defendant and employee-plaintiff were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, the employer-employee relationship existed between defendant-employer and the plaintiff-employee.
3. Defendant Cooper Electric Company, Inc.'s carrier on the risk in this claim is Ohio Casualty Group.
4. The plaintiff's average weekly wage in this claim is $480.00, which yields a compensation rate of $320.00.
5. Commission proceedings leading to the January 9, 2002 hearing marked as Stipulated Exhibit 2, may be received into evidence.
6. The plaintiff's medical records marked as Stipulated Exhibit 3 may be received into evidence.
7. There is no Stipulated Exhibit 1.
8. Defendants' Exhibit 1, the plaintiff's employment file, may be received into evidence without objection.
 ***********
Based upon the competent evidence of record, the undersigned makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a 43-year-old female who had obtained a GED.
2. On February 9, 2000, the plaintiff became employed with defendant-employer as an electrician's helper. Her job involved standing, climbing, stooping, pulling wires, and crawling. The plaintiff's job was a strenuous one and she worked ten hours per day, five to seven days per week. The plaintiff earned $9.00 an hour.
3. The plaintiff had no problems performing her job duties before March 2, 2000 and was in a good state of health. The plaintiff had no history of back problems.
4. On March 2, 2000, the plaintiff was at work for defendant-employer at a Harris Teeter West End Dock location in Greensboro. At approximately 1:50 p.m., the plaintiff was standing on the loading dock facing her tool box (gangbox) changing a drill bit while a heavy guardrail or bollard was being brought into the dock area by forklift. The forklift hit another very heavy guardrail, which fell over and struck the plaintiff in her back pushing her into the gangbox, which was about waist high, and pinning her between the gangbox and the guardrail. The plaintiff had to be rescued from the situation.
6. The plaintiff was unable to continue working and was immediately taken to Jamestown Emergency Clinic where she was treated by Dr. William O. Ameen, Jr. The plaintiff complained of right leg and low back pain.
7. The plaintiff was not able to return to work on March 2, 2000 because of disabling pain in her right leg and lower back. Dr. Ameen took the plaintiff out of work prescribing rest, pain pills and muscle relaxers. A lumbar MRI revealed possible spondylolisthesis of L5 on S1, bulging discs at L4-5 and L5-S1 and some degenerative disc disease at L4-5 and L5-S1.
8. On April 26, 2000, Dr. Ameen referred the plaintiff to Dr. Amundson, a High Point neurosurgeon as she continued to have complaints of low back and right leg pain.
9. On June 1, 2000, the plaintiff presented to Dr. Amundson complaining of right leg and low back pain. The plaintiff was diagnosed with a concussive injury to her low back area and given pain medicine, physical therapy, a functional capacity evaluation and a follow up evaluation following the FCE.
10. From July 7, through August 7, 2000, the plaintiff attended six physical therapy sessions. She continued to complain of right leg pain, which was worse than her low back pain. The plaintiff's pain was improved with rest and worsened by activity. The physical therapist prescribed a "donut" to help the plaintiff sit and felt the plaintiff needed an evaluation by an orthopedic surgeon.
11. Defendant-carrier sent the plaintiff to John T. Hayes, M.D., a Winston-Salem orthopedist. The plaintiff presented to Dr. Hayes on January 4, 2001 complaining of right leg and low back pain caused by the accident. Dr. Hayes diagnosed the plaintiff with a low back contusion, gave the plaintiff pain medicine and prescribed a functional capacity evaluation indicating that the plaintiff was to be returned to work at the level indicated by that evaluation.
12. On March 15, 2001, the plaintiff underwent a functional capacity evaluation. The plaintiff continued to complain of right leg pain and some low back pain. The FCE revealed that the plaintiff was functioning at the sedentary level and able to tolerate several activities on an occasional basis.
13. Thereafter, apparently the rehabilitation nurse contacted Dr. Hayes and requested that he release the plaintiff to return to work without restrictions and with no permanent disability. For whatever reason and without seeing the plaintiff, Dr. Hayes reversed his position and on March 29, 2001, wrote "no p.p.d. No work restrictions."
14. The plaintiff was not offered any job placement or vocational assistance to help her find employment.
15. On August 10, 2001, defendants filed a motion seeking termination of the plaintiff's disability benefits.
16. An Administrative Order dated September 27, 2001 granted defendants' Motion and allowed defendants to terminate the plaintiff's total disability compensation effective August 10, 2001.
17. In October or November 2001 the plaintiff sought employment on her own consistent with her work capabilities.
18. On November 10, 2001, Ed Lincoln hired the plaintiff to work for him as a personal assistant on a part-time basis doing filing and organization. The plaintiff earned $5.90 per hour and an average weekly wage of $70.02. The plaintiff worked for Mr. Lincoln until January 4, 2002 when the plaintiff resigned due to increased right leg and low back pain which made her unable to perform her work.
19. The plaintiff's employment with Mr. Lincoln allowed her to work any hours that she desired and to lie down and take a rest for periods up to one hour.
20. The plaintiff's complaints concerning her right leg and low back pain are found to be credible by the undersigned and persisted from the time of her injury up to the time of hearing.
21. Dr. Hayes' March 29, 2001 addendum releasing the plaintiff to return to work with no restrictions and with no permanent partial disability rating is given little weight. Dr. Hayes had originally stated that the plaintiff was to be placed back to work at the level revealed by the functional capacity evaluation; however, without exam, explanation or discussion, released the plaintiff to return to work with no restrictions and full duty in contradiction to the plaintiff's FCE results.
22. The plaintiff has not yet reached maximum medical improvement.
23. The plaintiff would most likely benefit from a work hardening program and vocational or job placement assistance, which may require additional education in order to find suitable employment.
24. Due to the plaintiff's chronic right leg pain and low back pain which is a direct and proximate result of her March 2, 2000 injury by accident, the plaintiff remains totally disabled from earning wages at any employment.
25. The plaintiff's return to work with Ed Lincoln in November 10, 2001 until January 4, 2002 was an unsuccessful return to work and does not indicate any wage-earning capacity, as the plaintiff was unable physically to tolerate the job duties.
26. Plaintiff was charged with arson in Stokes County, North Carolina. This arson charge, whatever the outcome, is irrelevant to plaintiff's workplace injury of March 2, 2000 and the case at hand.
27. Plaintiff is unable to do any sustained work activities more than a few hours a day due to low back and leg pain made worse with activities. Defendants continue to assert that plaintiff is able to perform work at the light to medium exertional level. Defendants located possible jobs for her that she believes she is not capable of performing. Defendants continue to disregard her statements concerning the nature and extent of her pain. In short, defendants' present vocational rehabilitation activities are misguided and misdirected. Accordingly, defendants' motion to the Full Commission for an Order forcing her to comply with their current vocational rehabilitation should be, and hereby is DENIED.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Pursuant to an order filed 5 June 2002 in the District Court of Stokes County, North Carolina, any workers' compensation benefits plaintiff is owed under this Opinion and Award are first subject to the plaintiff's child support obligations.
2. On March 2, 2000, the plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer, a low back strain and resulting right leg pain and low back pain. N.C.G.S. § 97-2(6).
3. As a direct and proximate result of the plaintiff's compensable injury and the resulting back pain, the plaintiff was unable to earn the same wages as that which she earning in her former job or any other job from March 2, 2000 and continuing except for her brief trial return to work from November 10, 2001 to January 4, 2002 when she earned a diminished wage. N.C.G.S. §§ 97-29; 97-30.
4. As a direct and proximate result of the plaintiff's compensable injury, the plaintiff is entitled to temporary total disability compensation at the rate of $320.00 per week from March 2, 2000 and continuing except for the period from November 10, 2001 into January 4, 2002 during her unsuccessful return to work. N.C.G.S. § 97-29.
5. As a direct and proximate consequence of the plaintiff's compensable injury, the plaintiff is entitled to temporary partial disability compensation at the rate of $273.32 per week for the period of her unsuccessful trial return to work from November 10, 2001 until January 4, 2002. During this period the plaintiff earned an average weekly wage of $70.02 and is entitled to temporary partial disability payments during this period at the rate of $273.32. N.C.G.S. § 97-30.
6. The treatment which the plaintiff has received for her low back and leg pain was reasonably designed to effect a cure, give relief and lessen the period of disability. N.C.G.S. § 97-25
7. The plaintiff is entitled to have defendants provide future medical treatment and vocational rehabilitation services related to her compensable injury. N.C.G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned makes the following:
 AWARD
1. Subject to the amounts owed in child support, defendants shall pay temporary total disability compensation to the plaintiff at the rate of $320.00 per week for the period from March 2, 2000 and continuing with the exception of the period from November 10, 2001 until January 4, 2002 when the plaintiff made an unsuccessful return to work. Portions of this amount have accrued and shall be paid in a lump sum. All amounts are subject to an attorney's fee contained in Paragraph 5.
2. Subject to the amounts owed in child support, defendants shall pay temporary partial disability compensation to the plaintiff at the rate of $273.32 per week for the period from November 10, 2001 through January 4, 2002. These amounts have accrued and shall be paid in a lump sum subject to an attorney's fee contained in Paragraph 5.
3. Defendants are entitled to a credit of any overpayment made to the plaintiff during the period of her unsuccessful trial return to work from November 10, 2001 to January 4, 2002.
4. A reasonable attorney's of 25% of the compensation due under Paragraphs 1 and 2 of this Award is approved for the plaintiff's counsel and shall be paid by defendants to the plaintiff's counsel by deducting from that sum and paid directly to the plaintiff's counsel.
5. Defendants shall pay all medical expenses incurred or to be incurred by the plaintiff as a result of this compensable injury.
 ORDER
The nurse case manager currently assigned to this case is HEREBY REMOVED and this case is HEREBY REMANDED IN PART to Deputy Commissioner Taylor for a hearing solely regarding the nurse's conduct in this case. Deputy Commissioner Taylor should determine whether the nurse's conduct should result in any penalties and/or attorney's fees being levied against defendants.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER